**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| RODNEY WESLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV364 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

### MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Rodney Wesley, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum); Docket Entry 15 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 251-52) and SSI (Tr. 241-50), alleging a disability onset date of March 20, 2016 (<u>see</u> Tr. 15, 241). Following denial of those applications initially (Tr. 85-106, 143-53) and on reconsideration (Tr. 107-138, 157-74), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 175-77). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 33-84.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 12-27.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 236-40), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings:

1. [Plaintiff] meets the insured status requirements of the . . . Act through March 31, 2018.

2. [Plaintiff] has not engaged in substantial gainful activity since March 20, 2016, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: osteoarthritis to include his right hip; degenerative disc disease; sciatica; insomnia; and anxiety disorder.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

2

. . .

5.   [Plaintiff] has the residual functional capacity to perform light work . . . with the following limitations: frequently push/pull and operate foot controls with the right lower extremity; occasionally climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; occasionally balance and crawl; frequently stoop, kneel and crouch; frequently reach, handle objects and finger bilaterally; occasionally reach overhead bilaterally; occasional exposure to vibration; and frequent exposure to unprotected heights, hazardous machinery or hazardous moving mechanical parts. [Plaintiff]'s work is limited to simple, routine and repetitive tasks, but not a production rate pace and frequent interaction with the public. [Plaintiff] would be off task no more than 10 percent of the time in an eight-hour workday, in addition to normal breaks (with normal breaks defined as a 15-minute morning and afternoon break and a 30-minute lunch break).

. . .

6.   [Plaintiff] is unable to perform any past relevant work.

. . .

10.  Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers on the national economy that [he] can perform.

. . .

11.  [Plaintiff has not been] under a disability, as defined in the . . . Act, from March 20, 2016, through the date of this decision.

(Tr. 17-26 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v.

3

<u>Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. <u>Standard of Review</u>

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

4

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]  "To regularize the

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The
(continued...)

5

adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).³ A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.'

_____

²(...continued)
statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

³ "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ err[ed] when he fail[ed] to resolve a conflict in the VE testimony" (Docket Entry 12 at 6 (underscoring omitted));

2) "[t]he ALJ err[ed] when he fail[ed] to conduct a proper RFC analysis" (id. (underscoring omitted));

3) "[t]he ALJ err[ed] by failing to properly consider medical opinions in accordance with the [r]egulations" (id. (underscoring omitted)); and

4) "[t]he [ALJ] err[ed] by failing to conduct proper analysis of the consistency of [Plaintiff's] allegations with the medical and other evidence" (id. (underlining and internal citations omitted)).

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (See Docket Entry 14 at 8-17.)

## 1. Internal Conflict in VE Testimony

Plaintiff asserts in his first assignment of error that the ALJ erred by failing to resolve an internal conflict in the VE's testimony. (See Docket Entry 12 at 6; see also Docket Entry 15 at 4-5.) Specifically, Plaintiff contends that the VE testified both that an individual off-task up to 10 percent of a workday could perform certain jobs available in significant numbers in the national economy (see Tr. 78-79) and that an individual who required two 10-minute breaks in addition to customary breaks could not find competitive employment (see Tr. 80). (See Docket Entry 12 at 6-7.) According to Plaintiff, "[t]hat contradiction in the testimony was not resolved either in the decision or otherwise on the record" and thus "the Commissioner has not met h[er] burden to prove that there are significant numbers of jobs in the economy under these conditions, and the decision must be vacated, reversed, and remanded for a new hearing." (Id. at 7.) For the reasons that follow, Plaintiff's arguments fall short.

Where, as in this case, "the claimant reaches step five, the burden shifts to the [Commissioner] to produce evidence that other jobs exist in the national economy that the claimant can perform considering his [or her] age, education, and work experience." Hunter, 993 F.2d at 35. "The Commissioner may meet this burden by

relying on the Medical-Vocational Guidelines (Grids) or by calling a [VE] to testify." Aistrop v. Barnhart, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R. § 404.1566).[6] When, as here, the RFC contains one or more non-exertional limitations, the Grids provide only a framework for decision-making, and "the testimony of a VE is normally required," Hooper v. Heckler, 752 F.2d 83, 88 (4th Cir. 1985), to determine the extent to which the non-exertional limitation(s) erode the applicable occupational base of available jobs at a given exertional level, see Social Security Ruling 83-14, Titles II and XVI: Capability to Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments, 1983 WL 31254, at *3-4 (1983) ("SSR 83-14").

Here, in light of the non-exertional limitations in the RFC (see Tr. 19-20 (reflecting limitations on postural and manipulative movements, on exposure to vibration and certain workplace hazards, to simple, routine and repetitive tasks not involving production pace, on interaction with public, and on time off task)), the ALJ relied upon Grid Rule 202.18 only as a framework for decision (see

---

[6] "The Grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the [table or] rule directs a finding of 'disabled' or 'not disabled.'" Black v. Astrue, No. 3:09CV599, 2010 WL 2306130, at *4 (E.D. Va. Apr. 26, 2010) (unpublished) (internal citations and footnotes omitted), recommendation adopted, 2010 WL 2306136 (E.D. Va. June 3, 2010) (unpublished).

Tr. 26), and called a VE to testify as to the impact of those limitations on the light-exertion occupational base (<u>see</u> Tr. 26, 73-83). As relevant to the instant assignment of error, the ALJ asked the VE if jobs existed in the national economy for a hypothetical individual with the same age, education, work experience, and RFC as Plaintiff, including remaining off-task no more than 10 percent of the time in an eight-hour workday, exclusive of normal breaks. (<u>See</u> Tr. 77.) The VE responded that a significant number of jobs existed in the national economy for a person with such limitations. (<u>Id.</u>) On cross-examination, Plaintiff inquired as to the same hypothetical person's ability to take "two additional ten minute[] breaks," and the VE responded that such unscheduled breaks "[we]re not tolerated" in unskilled jobs and "would typically preclude work if they were occurring on a regular basis." (Tr. 80.)[7] For the reasons more fully detailed below, Plaintiff's contention that the VE's above-described testimony constitutes a "contradiction" warranting remand (Docket Entry 12 at 7) fails for two reasons.

---

[7] As Plaintiff notes (<u>see</u> Docket Entry 12 at 7 n.1), the RFC's allowance that Plaintiff remain "off task no more than 10 percent of the time in an eight-hour workday, in addition to normal breaks" (Tr. 20) does not specify if the 10 percent applied to the full, eight-hour workday (48 minutes) <u>in addition to</u> the one hour of normal breaks, for a total of one hour and 48 minutes off task, or rather applied to the seven hours of work time <u>exclusive</u> of normal breaks (42 minutes), for a total of one hour and 42 minutes of time off task. (Tr. 19-20.) The ALJ suggested in his questioning of the VE that the limitation applied <u>exclusive</u> of normal breaks. (<u>See</u> Tr. 77.) However, the Court need not resolve that ambiguity, as the same analysis applies irrespective of whether the RFC allows for 48 minutes or 42 minutes of time off task in addition to normal breaks.

11

First, despite having an opportunity for full cross-examination, Plaintiff's counsel neither identified the "contradiction" about which he now complains nor asked the VE to resolve the "contradiction" on the record. (See Tr. 79-83.) Under such circumstances, Plaintiff has waived, in this Court, any challenge to the VE's testimony regarding a conflict between time off-task and unscheduled breaks. See Coyier v. Saul, Civ. No. 20-1899, 2021 WL 2173425, at *2 (7th Cir. May 27, 2021) (unpublished) (holding that the plaintiff "waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates"); Coleman v. Colvin, Civ. No. 0:14-2697, 2015 WL 5474674, at *19 (D.S.C. Sept. 16, 2015) (unpublished) ("[T]he court is unpersuaded by [the plaintiff's] attempts to now challenge the [VE's] testimony and the ALJ's findings and point out possible conflicts when none was raised during the proceeding."); Meyerink v. Colvin, No. 2:13CV327, 2015 WL 773041, at *14 (N.D. Ind. Feb. 24, 2015) (unpublished) ("[The p]laintiff also contends that the VE's testimony is further undermined by an internal inconsistency. He points out that the VE testified that there would be a twenty-five percent reduction in the number of jobs to accommodate a sit/stand option. The VE then stated that there would be 1,500 small parts assembler jobs with a sit/stand option, which was an increase, rather than a reduction, from the original number of 1,000 sedentary small parts assembly

12

jobs. An ALJ's reliance on imperfect VE testimony does not warrant remand if, as here, a claimant does not question the basis for the testimony at the time of the hearing."); Bunton v. Colvin, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (unpublished) (finding waiver of issue on judicial review where the plaintiff "failed to mount any opposition . . . to the view that he retained the capacity to do the [jobs proffered by the VE], despite . . . the opportunity . . . to question the VE about . . . those positions"), recommendation adopted, slip op. (M.D.N.C. Mar. 10, 2014) (Schroeder, J); Stepinski v. Astrue, Civ. No. 11-183, 2012 WL 3866678, at *9-10 (D.R.I. Aug. 6, 2012) (unpublished) ("The [c]ourt views unfavorably the silence of [the p]laintiff's counsel at the hearing regarding the omission about which he now complains. Reversal and remand . . . would encourage other counsel to remain silent in similar circumstances. This [c]ourt is disinclined to provide such an incentive. Accordingly, the [c]ourt finds that [the p]laintiff waived this issue by failing to raise it before the ALJ." (internal citations omitted)), recommendation adopted, 2012 WL 3863812 (D.R.I. Sept. 5, 2012) (unpublished); Young v. United States Comm'r of Soc. Sec., No. CV08-0474, 2009 WL 2827945, at *13 (W.D. La. Sept. 1, 2009) (unpublished) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts . . ., and then present that conflict as reversible error, when the

13

conflict was not deemed sufficient to merit adversarial development in the administrative hearing.").

Moreover, Social Security Ruling 00-4p, <u>Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p"), does not alter the Court's forfeiture analysis. SSR 00-4p places an <u>affirmative duty</u> on an ALJ to <u>independently</u> elicit an explanation from the VE as to any "<u>apparent unresolved conflict</u>" between the VE's testimony and the <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>"), SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added), and thus, "a claimant does not forfeit or waive her right to raise this particular issue before the district court if the claimant failed to raise it at the ALJ hearing," <u>Weaver v. Colvin</u>, No. 1:10CV582, 2013 WL 3989561, at *12 (M.D.N.C. Aug. 2, 2013) (unpublished) (Webster, M.J.), <u>recommendation adopted</u>, 2013 WL 4768178 (M.D.N.C. Sept. 5, 2013) (unpublished) (Eagles, J.). Plaintiff has not, however, identified any authority burdening the ALJ with an independent, affirmative duty to identify and resolve <u>all possible internal inconsistencies</u> in the VE's testimony and/or precluding waiver/forfeiture outside the context of SSR 00-4p (<u>see</u> Docket Entries 12, 15). See <u>Unbehagen v. Saul</u>, No. 1:18CV704, 2019 WL 4415149, at *7 (M.D.N.C. Sept. 16, 2019) (unpublished) (rejecting the plaintiff's argument that "no issue exhaustion

14

requirement in SSA cases [exists] in the Fourth Circuit" as
"overstat[ing] the holding in Pearson[v. Colvin, 810 F.3d 204 (4th
Cir. 2015)]" which held, "in the specific context of SSR 00-4p,
. . . that claimants need not raise the issue of an apparent
conflict between the VE's testimony and the DOT during the hearing
before the ALJ" (emphasis added) (citing Pearson, 810 F.3d at
209)), recommendation adopted, slip op. (M.D.N.C. Feb. 28, 2020)
(Tilley, S.J.); see also Webster v. Commissioner of Soc. Sec., 773
F. App'x 553, 555 (11th Cir. 2019) ("[D]uring the hearing, [the
plaintiff] did not question the VE's qualifications and . . . did
not address his present concerns about the reliability of the VE's
testimony. . . . Further, to the extent that [the plaintiff]
argues that the ALJ was required to independently verify a VE's
testimony, we have held that the ALJ is only required to do so when
there is a conflict between the VE's testimony and the [DOT]."
(citing Washington v. Commissioner Soc. Sec., 906 F.3d 1353, 1365
(11th Cir. 2018))); Beattie v. Astrue, No. 5:09CV5, 2009 WL
4510117, at *10 (M.D. Fla. Dec. 1, 2009) (unpublished) ("SSR 00-04p
focuses on the ALJ's obligation to independently investigate
whether there is a conflict between the VE's testimony and the
[DOT], not whether the VE's testimony is internally
inconsistent.").

Second, even if Plaintiff had not waived his instant
challenge, his argument still falters, because Plaintiff has not

15

shown that the VE's testimony in question even amounts to a conflict. The concepts of "time off-task" and "breaks" differ significantly in their impact on worker productivity. For example, "breaks" denote time physically away from the work station and occur in continuous blocks of time, where a worker typically remains unable to engage in his or her work duties. In contrast, "time off-task" can occur while an individual remains at the work station and can happen intermittently, such as when a worker uses his or her cell phone, talks with a co-worker, or otherwise temporarily loses focus on the task at hand. In other words, unscheduled breaks detrimentally impact an employee's productivity in a manner that intermittent time off-task does not. Thus, the VE's testimony on the one hand that employers would tolerate up to 10 percent of a workday off-task and on the other hand that two unscheduled ten-minute breaks would preclude competitive employment did not inherently conflict.

Furthermore, independent research reveals that cases where courts have remanded due to an ALJ's alleged failure to identify and resolve internal inconsistencies in a VE's testimony involve actual conflicts that remained largely irreconcilable absent further explanation. See, e.g., Kimbra L. v. Acting Comm'r of Soc. Sec., No. 3:20CV6192, 2021 WL 3088713, at *4 (W.D. Wash. July 22, 2021) (unpublished) ("[T]he VE testified that . . . an employer can typically tolerate one [absence] per month or one [absence] every

other month without termination of employment.  This response is
inconsistent with the previous unequivocal testimony by the VE that
one with absenteeism of one time per month could maintain
competitive employment in the three identified jobs. . . .  Indeed,
this portion of the VE's testimony clearly indicates that some
employers will not tolerate the absenteeism the ALJ found that
[the] plaintiff suffered from as reflected in [the] plaintiff's
RFC.  The [c]ourt therefore finds persuasive [the] plaintiff's
argument that the VE did not provide job numbers for how many of
the jobs she named would accept one day a month of absenteeism and
how many would not[.] . . .  The ALJ's reliance on one portion of
the VE testimony, while ignoring th[e] other portion, provided
minutes later, is not such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." (emphasis added,
internal citations and quotation marks omitted));  Michael D. v.
Commissioner of Soc. Sec., No. 3:19CV5137, 2020 WL 10088719, at *2
(W.D. Wash. Feb. 19, 2020) (unpublished) ("[T]he VE's testimony was
internally inconsistent: it does not make logical sense that [the]
plaintiff would maintain the ability to perform this job if he was
limited to standing for anywhere from two to four hours, yet also
lack the ability to perform the same job if he was limited to
standing for only two hours.  The VE's testimony could not support
a finding either way as to whether plaintiff could physically
perform the . . . job.  As a result, the ALJ lacked a substantial

17

evidentiary basis for finding that the plaintiff could perform his past work . . . ." (emphasis added)), <u>recommendation adopted</u>, 2020 WL 1150988 (W.D. Wash. Mar. 9, 2020) (unpublished); <u>Fister v. Astrue</u>, Civ. No. 11-01461, 2012 WL 4685358, at *26 (N.D. Cal. Sept. 30, 2012) (unpublished) (where the plaintiff testified that his prior work as "head clerk" (which the VE classified as "grocery clerk" in the <u>DOT</u>) constituted essentially the same job as his past role as "department head" (which the VE categorized as "department manager" in the <u>DOT</u>), the court found that "the VE's testimony that the [plaintiff] could perform the grocery clerk job [wa]s <u>inconsistent</u> with [the VE's] testimony that the [plaintiff] could not perform the department head job. . . . Because the VE's testimony was internally <u>inconsistent</u>, the ALJ's reasoning was flawed." (emphasis added, internal citations and quotation marks omitted)); <u>Duran v. Astrue</u>, 654 F. Supp. 2d 1298, 1304 (D. Colo. 2009) ("The VE defined production quota . . . as so many woodchips or keystrokes per minute. For instance in a factory assembly line . . . you may have to do so many objects per minute or hour, or you may have to keep up with the line . . . . In terms of clerical type positions, . . . they count the keystrokes or the words per hour . . . . Upon additional examination, the VE testified that a maid would be required to clean a certain number of rooms per day or hour. . . . Neither the VE nor the ALJ explained how the job of maid . . . would not be considered a job that required a production

18

quota in light of the [VE's] definition . . . .  The ALJ's failure to reconcile this internal <u>inconsistency</u> shows the ALJ's finding that Plaintiff could perform the job of maid was not based upon substantial evidence and the correct legal standards." (internal parenthetical citations and quotation marks omitted)).  As the VE's testimony at issue here remains reconcilable on the existing record, no basis exists for the Court to remand this matter.

Put simply, Plaintiff's first assignment of error does not warrant relief.

## 2. RFC Analysis

Plaintiff next contends that the ALJ "fail[ed] to conduct a proper RFC analysis." (Docket Entry 12 at 7 (underscoring omitted); <u>see also</u> Docket Entry 15 at 1-4.)  Specifically, Plaintiff alleges that the ALJ frustrated meaningful review when he failed to provide a "logical bridge" from the evidence to his RFC conclusions.  (<u>See</u> Docket Entry 12 at 8 (quoting <u>Woods v. Berryhill</u>, 888 F.3d 686, 694 (4th Cir. 2018), and citing <u>Thomas v. Berryhill</u> 916 F.3d 307, 311 (4th Cir. 2019).)  The Court should deny relief on this assignment of error.

RFC measures the most a claimant can do despite any physical and mental limitations.  <u>See</u> <u>Hines</u>, 453 F.3d at 562; <u>see also</u> 20 C.F.R. §§ 404.1545(a), 416.945(a).  An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related

19

symptoms, including pain.  See Hines, 453 F.3d at 562-63; see also 20 C.F.R. §§ 404.1545(b), 416.945(b).  The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy).  See 20 C.F.R. §§ 404.1567, 416.967.  Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level.  See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).  An ALJ need not discuss every piece of evidence in making an RFC determination.  See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).  However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion."  Woods, 888 F.3d at 694 (internal emphasis, quotation marks, and brackets omitted).

The ALJ's RFC determination "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)."  Mascio v. Colvin, 708 F. 3d 632, 636 (4th Cir. 2015).  "The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."  Radford v. Colvin, 734 F. 3d 288, 295 (4th Cir. 2013).  "[Fourth Circuit] precedent makes clear that it is not [the Court's] role to speculate as to how the ALJ applied

20

the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." Fox v. Colvin, 632 F. App'x 750, 755 (4th Cir. 2015). When an ALJ "leaves [the Court] to wonder" how the ALJ reached his conclusions, the Court cannot conduct meaningful review. Id. (citing Mascio, 780 F.3d at 638).

For reasons detailed below, the ALJ satisfied the burdens associated with explaining the RFC.

**a. Time Off-Task RFC Limitation**

Plaintiff first contends that the ALJ did not explain how he reached his conclusion that Plaintiff would remain off-task no more than 10 percent of an eight-hour workday in addition to normal breaks. (See Docket Entry 12 at 8 (citing Tr. 20-26).) In that regard, Plaintiff notes that "the phrase 'off task no more than 10 percent of the time,' or other similar phrase, appears once in the decision: in the RFC statement itself." (Id. (citing Tr. 20).) According to Plaintiff, "[t]h[at] failure of explanation requires remand." (Id. (citing Richardson v. Saul, No. 4:19CV128, 2020 WL 3816317, at *6 (E.D.N.C. June 9, 2020) (unpublished), recommendation adopted, slip op. (E.D.N.C. Jul. 7, 2020); Patricia W. v. Berryhill, No. 1:19CV9, 2019 WL 6790512, at *3 (D. Md. Dec. 12, 2019) (unpublished)).) Plaintiff concedes that the ALJ provided a "thorough" and "detailed summary of the evidence" (id. (citing Tr. 18-25)), but contends that "'nothing within provide[d a] narrative basis for the specific conclusion that the [p]laintiff

21

w[ould] be expected to be off task for ten percent of the workday'" (id. (some internal quotation marks omitted) (quoting Michael K. v. Social Sec. Admin., No. 18CV1038, 2019 WL 1501582, at *2 (D. Md. Mar. 7, 2019) (unpublished), and citing Higgs v. Berryhill, No. 5:18CV22, 2019 WL 848730, at *4-5 (E.D.N.C. Jan. 10, 2019) (unpublished), recommendation adopted, 2019 WL 845406 (E.D.N.C. Feb. 21, 2019) (unpublished))). Plaintiff maintains that the ALJ's decision instead, "without intervening explanation or rationale, . . . presents its conclusions in self-contained generic paragraphs" (id. at 9 (citing Tr. 21 (¶ 5), 23 (¶ 5), 24 (¶¶ 3, 5), 24-25, 25 (¶ 2))) which "fail[] to explain how this evidence supports the RFC finding" (id. (citing Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997) ("[S]imply describing material evidence on the record . . . without explaining how it relates to a claimant's alleged impairments is tantamount to ignoring it."), DeLoatche v. Heckler, 715 F.2d 149, 150 (4th Cir. 1983), and McCain v. Colvin, No. 1:15CV99, 2016 WL 4487772, at *8 (M.D.N.C. Aug. 25, 2016) (Osteen, C.J.) (unpublished). Plaintiff's contentions miss the mark.

As a threshold matter, Plaintiff's assertion that "the phrase 'off task no more than 10 percent of the time,' or other similar phrase, appears once in the decision: in the RFC statement itself" (Docket Entry 12 at 8 (citing Tr. 20)) falls short. Towards the end of the ALJ's RFC analysis, he explained that Plaintiff's

22

"mental impairment is fully accommodated by limiting him to unskilled, non-production rate pace work, with social interaction restrictions and an allowance for time off task (<u>which also addresses his pain and the side effects of his medications</u>)." (Tr. 24 (emphasis added).) Thus, the ALJ made clear that the combination of Plaintiff's anxiety, pain, and narcotic side effects resulted in the off-task limitation.

Moreover, in the time off-task cases cited by Plaintiff, the courts could not discern the basis for the ALJ's very specific off-task limitation. <u>See</u> <u>Richardson</u>, 2020 WL 3816317, at *6 ("[T]here is no 'logical bridge' between the evidence and the conclusion that [the plaintiff] would be off task up to <u>nine</u> percent of the workday[.]" (emphasis added)); <u>Patricia W</u>, 2019 WL 6790512, at *3 ("[T]he ALJ failed to explain how he reached the conclusion of 10%[, and t]his [c]ourt is not in a position to determine, in the first instance, whether [the p]laintiff would be off-task 10%, 15%, 5% or 13% of the time."); <u>Michael K.</u>, 2019 WL 1501582, at *2 ("Despite the ALJ's extraordinarily thorough analysis of the case as a whole, nothing within provides narrative basis for the specific conclusion that [p]laintiff will be expected to be off task for ten percent of the workday" (internal quotation marks omitted); <u>Higgs</u>, 2019 WL 848730, at *4-5 (finding that ALJ "did not provide a narrative discussion describing how the evidence supports [the off task] conclusion" and noting that "evidence indicate[d]

23

that [the plaintiff] would be off task more than ten percent of the time" (internal quotation marks omitted)). Notably, in one of the above-cited cases, the ALJ found that the claimant would remain off-task <u>nine</u> percent of an eight-hour workday, a precise number which fell just below what the VE deemed work-preclusive. <u>See</u> <u>Richardson</u>, 2020 WL 3816317, at *7 n.2 (noting "curious nature of the off-task figure" of nine percent). In two others, the ALJ assigned a <u>fixed</u> percentage (ten percent) of time off task. <u>See</u> <u>Patricia W</u>, 2019 WL 6790512, at *3; <u>Michael K.</u>, 2019 WL 1501582, at *2. In the one case where the ALJ determined that the plaintiff would remain off-task "no more than ten percent" of a workday, the court actually found that the "evidence indicate[d] that [the plaintiff] would be off task <u>more</u> than ten percent of the time." <u>Higgs</u>, 2019 WL 848730, at *4 (emphasis added).

Here, in contrast, the ALJ assigned neither an unusual nor a fixed percentage of time Plaintiff would remain off-task, instead finding that he "would be off task <u>no more than 10 percent</u> of the time in an eight-hour workday." (Tr. 20 (emphasis added).) In other words, the ALJ found that Plaintiff's mental impairment, pain, and narcotics side effects caused <u>some</u> limitations in Plaintiff's ability to remain on-task, but not <u>disabling</u> limitations. (<u>See</u> Tr. 24 ("[T]he record documents that [Plaintiff] suffers from physical and mental impairments which . . . do cause certain limitations[; h]owever, the record does not establish that

24

[Plaintiff]'s limitations are disabling.").)  This determination coheres with the ALJ's other findings that A) Plaintiff suffered from severe anxiety disorder (see Tr. 17) that did not meet or equal any listing (see Tr. 18-19); B) Plaintiff's anxiety caused him to have <u>moderate</u> (not marked or extreme) limitation in his ability to concentrate, persist, and maintain pace (see Tr. 19); and C) Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms" (Tr. 21), including his testimony that "he had short-term memory issues and that it was difficult for him to concentrate and focus" (id.; see also Tr. 56), were "not entirely consistent with the medical evidence and other evidence in the record" (Tr. 21).

Under such circumstances, the Court can trace the path of the ALJ's reasoning for finding Plaintiff would remain off-task for up to 10 percent of a workday, and the Court should thus deny relief on Plaintiff's challenge to the ALJ's off-task finding.  See Link v. Saul, No. 1:19CV662, 2020 WL 5044038, at *9 (M.D.N.C. Aug. 26, 2020) (unpublished) (holding that ALJ's findings at step two of SEP, analysis of Plaintiff's subjective symptom reporting, and evaluation of objective evidence "adequately explained the RFC's allowance for [the p]laintiff to remain off-task for up to 10 percent of the workday in addition to normal breaks"), recommendation adopted, slip op. (M.D.N.C. Sept. 10, 2020) (Biggs, J.).

25

**b. Treatment of Opinion Evidence**

Plaintiff next avers that the ALJ formed "naked conclusions" about opinion evidence. (Docket Entry 12 at 10.) Plaintiff specifically posits that the ALJ erred in affording limited weight to orthopedist Dr. Peter Gilmer's opinions that Plaintiff 1) "[wa]s certainly likely not able physically to do the kind of work he used to do" (id. (quoting Tr. 23); see also Tr. 512), and 2) "could not return, for medical reasons, to his former work" (id. at 11 (citing Tr. 24, 702)). The ALJ afforded both of those opinions limited weight, in part, because "[t]he limitations [we]re not expressed in vocationally relevant terms." (Tr. 23, 24.) Plaintiff insists that the ALJ "did not explain" how Dr. Gilmer's opinions qualified as "vocationally irrelevant." (Docket Entry 12 at 10 (internal quotation marks omitted).) Plaintiff's arguments lack merit.

The ALJ did not err in discounting Dr. Gilmer's opinions based on the absence of vocationally relevant terms (see Tr. 23, 24), because the opinions provided <u>no functional limitations</u> arising from Plaintiff's impairments (see Tr. 512, 702). See <u>Gillis v. Colvin</u>, No. 1:14CV426, 2015 WL 4644777, at *6 (M.D.N.C. Aug. 4, 2015) (unpublished) (Webster, M.J.) ("[T]he ALJ accurately noted that each report [of the consultative psychological examiner wa]s . . . not expressed in vocationally relevant terms — that is, neither report provide[d] functional limitations arising from [the plaintiff's] mental impairments."), <u>recommendation adopted</u>, slip

26

op. (M.D.N.C. Aug. 26, 2015) (Schroeder, J.).  Thus, although Dr. Gilmer opined that Plaintiff could not perform his past work, Dr. Gilmer did not include <u>any</u> specific functional limitations that could inform the RFC assessment.  (<u>See</u> Tr. 512, 702.) Consequently, the ALJ correctly determined that Dr. Gilmer failed to offer an opinion in vocationally relevant terms.  (<u>See</u> Tr. 23, 24.)

Furthermore, even if Dr. Gilmer expressed his opinions in vocationally relevant terms, any error by the ALJ in that regard would remain harmless, <u>see generally</u> <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"), as the ALJ nevertheless found at step four of the SEP that Plaintiff could not perform any of his past relevant work, i.e., the same conclusion Dr. Gilmer reached in the opinions in question.  (<u>Compare</u> Tr. 25, <u>with</u> Tr. 512, 702.)

In light of the foregoing analysis, Plaintiff's second issue on review does not entitle him to remand.[8]

---

[8]  In Plaintiff's principal brief, he cited <u>Thomas</u> for the broad propositions that "[a] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion" and that "the ALJ's logical explanation[] is just as important as the other two [components]."  (Docket Entry 12 at 8 (quoting <u>Thomas</u>, 916 F.3d at 311).)  In response, the Commissioner discussed the holding in <u>Thomas</u> and contended that, "[u]nlike the ALJ's cursory analysis in <u>Thomas</u>, the ALJ provided ample discussion of how Plaintiff's mental impairments impacted his ability to perform work-relate tasks."  (Docket Entry
(continued...)

27

### 3. Opinion Evidence

In Plaintiff's third issue on review, he again contends that the ALJ erred in his evaluation of Dr. Gilmer's opinions. (See Docket Entry 12 at 12-14.) In particular, Plaintiff asserts that the ALJ failed to properly evaluate Dr. Gilmer's 1) March 2017 opinion that Plaintiff "'[wa]s certainly likely not able physically to do the kind of work he used to do'" (id. at 13 (quoting Tr. 820)), and 2) October 2018 opinion that Plaintiff "[wa]s likely to have substantial limitations on what he can do" (id. (citing Tr. 537)). For the reasons discussed in more detail below, Plaintiff has not established error with respect to the ALJ's evaluations of either opinion.

---

[8](...continued)
14 at 10 (internal quotation marks and brackets omitted).) In Plaintiff's Reply, he summarily argues that all four "flaws" in the ALJ's RFC analysis identified by the Fourth Circuit exist in the instant matter. (See Docket Entry 15 at 2-4 (citing Thomas, 916 F.3d at 312).) Regarding the first and second "flaws," Plaintiff does not make any argument as to why the ALJ's limitations to SRRTs not involving a production rate pace with frequent interaction with the public, as well as an allowance to remain off-task for up to ten percent of the workday (see Tr. 19-20), fail to address Plaintiff's abilities throughout a workday and fails to identify any specific mental health evidence the ALJ insufficiently considered. (See Docket Entry 15 at 3.) Plaintiff's conclusory argument regarding the third "flaw" fails, because the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms not entirely consistent with the medical evidence and other evidence in the record" (Tr. 21 (emphasis added)) and did not find that "limitations caused by [Plaintiff]'s impairments were consistent with the [RFC]" (Docket Entry 15 at 4). Plaintiff's undeveloped contention regarding the fourth "flaw" founders, because the ALJ did not use the phrase "production rate or demand pace" in the RFC but rather precluded work "not at a production rate pace" (Tr. 19). "That distinction matters, as the phrase 'production rate pace' appears in the definition of light work in the Dictionary of Occupational Titles ('DOT')." Shaw v. Kijakazi, No. 1:20CV581, 2021 WL 3079905, at *7 (M.D.N.C. July 21, 2021) (unpublished) (citing DOT, App'x C ("Components of the Definition Trailer"), § IV ("Physical Demands – Strength Rating"), 1991 WL 688702), recommendation adopted, slip op. (M.D.N.C. Aug. 23, 2021) (Osteen, J.).

28

**a. March 2017 Opinion**

Plaintiff first takes issue with the ALJ's decision to afford limited weight to Dr. Gilmer's March 2017 opinion that Plaintiff "[wa]s certainly likely not able physically to do the kind of work he used to do." (Id. at 12 (quoting Tr. 820, and referencing Tr. 23).) In particular, Plaintiff suggests that the ALJ failed to consider the nature and extent of the treatment relationship between Plaintiff and Dr. Gilmer (see id. at 13 (citing 20 C.F.R. §§ 404.1527(c)(1)-(c)(6), 416.927(c)(1)-(c)(6))), and faults the ALJ's decision to afford Dr. Gilmer's March 2017 opinion limited weight because it "addressed the ultimate issue of returning to work," noting that the opinion "stop[s] well short of stating that [Plaintiff] is 'disabled' or 'unable to work,' only venturing as far as to say that [Plaintiff] could not perform the work he used to do" (id. at 14). Plaintiff's contentions fail for three reasons.

First, although an ALJ generally affords more weight to medical opinions from treating sources, see 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("Generally, the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight [an ALJ] will give to the source's medical opinion."), when Dr. Gilmer offered the March 2017 opinion, he had not yet established a treating relationship with Plaintiff, because Dr. Gilmer offered

29

the opinion in connection with Plaintiff's <u>first</u> documented appointment with him. (<u>See</u> Tr. 509.) Contrary to Plaintiff's argument (<u>see</u> Docket Entry 12 at 13 (citing Tr. 502, 508, 535, 538, 544, 553, 697)), Plaintiff's seven <u>subsequent</u> visits with Dr. Gilmer (<u>see</u> Tr. 502 (6/5/17), 508 (5/8/17), 535 10/5/18), 538 (9/19/18), 544 (8/8/18), 553 (3/19/18), 700 (11/28/18)) cannot <u>retroactively</u> establish a treatment history to support opinions made at Plaintiff's <u>first</u> appointment with Dr. Gilmer in March 2017.[9] Moreover, Plaintiff's first appointment with Dr. Gilmer consisted of a disability evaluation, reflecting the consultative nature of the appointment. (<u>See</u> Tr. 511.) Consultative examinations do not establish treatment relationships. <u>See</u> 20 C.F.R. §§ 404.1527(c)(2), 416.927 (c)(2).

Second, whether a claimant remains able to work (whether past relevant work or any other competitive work in the national economy) constitutes an issue reserved for the Commissioner. <u>See</u> <u>Presley v. Astrue</u>, No. CIV.A. 07-2060, 2007 WL 4662108, at *4 (D. Kan. Oct. 11, 2007) (unpublished) (holding that "[d]etermination of issues reserved to the Commissioner, such as opinions regarding . . . whether a plaintiff can do past relevant work . . ., will not be given any special significance or controlling weight"), <u>recommendation adopted</u>, 2007 WL 4365434 (D. Kan. Dec. 12, 2007)

---

[9] Plaintiff mis-cited the page of his office visit with Dr. Gilmer on November 28, 2018 as appearing at page 697 of the administrative transcript. (<u>See</u> Docket Entry 12 at 13 (citing Tr. 502, 508, 535, 538, 544, 553, 697).) That record actually appears beginning at page 700. (<u>See</u> Tr. 700.)

30

(unpublished); see also 20 C.F.R. §§ 404.1527(d), 416.927(d)
("Opinions on some issues . . . are not medical opinions . . . but
are, instead, opinions on issues reserved to the Commissioner . . .
A statement by a medical source that [a claimant is] . . . 'unable
to work' does not mean that [the Commissioner] will determine that
[the claimant is] disabled."). Thus, Dr. Gilmer's March 2017
opinion that Plaintiff would "certainly likely not able to do the
kind of work he used to do" (Tr. 512) did not merit any special
significance, see Coleman v. Colvin, No. 1:15CV751, 2016 WL
4223583, at *7 (M.D.N.C. Aug. 9, 2016) (unpublished) (Webster,
M.J.), recommendation adopted, 2016 WL 5372817 (M.D.N.C. Sept. 26,
2016) (unpublished) (Schroeder, J).

Third, as discussed above, Plaintiff has not shown how the
ALJ's decision to discount Dr. Gilmer's opinion amounts to
prejudicial error. See generally Fisher, 869 F.2d at 1057
(observing that "[n]o principle of administrative law or common
sense requires us to remand a case in quest of a perfect opinion
unless there is reason to believe that the remand might lead to a
different result"). Despite affording Dr. Gilmer's March 2017
opinion limited weight (see Tr. 23), the ALJ nevertheless found at
step four of the SEP that Plaintiff could not perform any of his
past relevant work, i.e., the same conclusion Dr. Gilmer reached in
his March 2017 opinion (compare Tr. 25, with Tr. 512).

In sum, Plaintiff has not established that the ALJ erred in his evaluation of Dr. Gilmer's March 2017 opinion.

**b. October 2018 Opinion**

Plaintiff next takes issue with the ALJ's affording limited weight to Dr. Gilmer's October 2018 opinion. (See Docket Entry 12 at 13-14.) In particular, Plaintiff contends that "Dr. Gilmer opined that [Plaintiff wa]s likely to have substantial limitations on what he c[ould] do," and argues that an MRI of Plaintiff's lumbar spine supported that opinion. (Id. at 13 (emphasis added) (citing Tr. 537).)

As an initial matter, Plaintiff misquotes Dr. Gilmer's October 2018 opinion. Dr. Gilmer actually opined that Plaintiff should "remain active" and would "likely [] have limitations on how much he can do and for how long" and did not indicate that Plaintiff would have "substantial" limitations. (Tr. 537.)

Moreover, as recognized by the ALJ (see Tr. 24), Dr. Gilmer's opinion qualifies as vague. Vagueness constitutes a permissible grounds for an ALJ to discount a medical opinion. See Gallardo v. Berryhill, No. 1:16CV355, 2017 WL 1409575, at *7 (M.D.N.C. Apr. 20, 2017) (unpublished), recommendation adopted, 2017 WL 2623884 (M.D.N.C. June 16, 2017) (unpublished) (Schroeder, J.) (citing Rogers v. Commissioner of Soc. Sec. Admin., 490 F. App'x 15, 17 (9th Cir. 2012) (concluding ALJ properly discounted as equivocal physician's opinion that a claimant "might be unable to deal with

32

the usual stress encountered in the workplace" (emphasis added))). Dr. Gilmer equivocated by opining that "[Plaintiff wa]s likely to have limitations on how much he can do and for how long" (Tr. 537 (emphasis added)), and his opinion neither contained an explanation as to which activities Plaintiff's condition limited nor described the length of time Plaintiff could engage in such activities, see 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (stating that the better explanation a source provides for an opinion, the more weight the Commissioner gives that opinion); see generally Briggs v. Berryhill, No. 1:18CV217, 2019 WL 568571, at *4 (M.D.N.C. Feb. 12, 2019) (unpublished) (Webster, M.J.); Foltz v. Colvin, No. 1:14CV55, 2015 WL 339654, at *5 (M.D.N.C. Jan. 23, 2015) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Feb. 18, 2015) (Beaty, Jr., J.).

Furthermore, Dr. Gilmer neither specified whether he meant to describe a permanent or temporary limitation, nor supported his statement with examples of specific objective findings which led him to his opinion. (See Tr. 537.) Instead, Dr. Gilmer recognized that Plaintiff had good clinical strength in both legs and moved independently and, in the sentence preceding Dr. Gilmer's opinion at issue, opined that Plaintiff did not require surgery and expressed doubt that Plaintiff's pain would benefit from an epidural injection. (See id.) Subsequently, Dr. Gilmer noted that "[a] formal Functional Capacity Evaluation could be done if

33

assessment of [Plaintiff's] exact work potential is required." (Id.) Dr. Gilmer, therefore, buffered his opinion with his general thoughts on Plaintiff's condition and the possibility of a more precise evaluation, thereby underscoring the lack of specificity of his opinion.

Plaintiff further attacks the ALJ's assignment of limited weight to Dr. Gilmer's October 2018 opinion because "'the opinion addresse[d] the ultimate issue of disability (return to work), an issue reserved to the SSA Commissioner.'" (Docket Entry 12 at 13 (quoting Tr. 24 (¶ 5)).) According to Plaintiff, Dr. Gilmer's October 2018 opinion "stop[s] well short of stating that [Plaintiff] is 'disabled' or 'unable to work.'" (Docket Entry 12 at 14.) Plaintiff's argument fails, because the ALJ did not discount Dr. Gilmer's October 2018 opinion as involving "an issue reserved to the SSA Commissioner" (id. at 13). Rather, the ALJ properly assigned that opinion "limited weight" because it qualified as "vague" and because it "contain[ed] no vocationally relevant functional limitations." (Tr. 24.)[10]

---

[10] Plaintiff's challenge to the ALJ's assignment of limited weight to Dr. Gilmer's October 2018 opinion because "'the opinion addresse[d] the ultimate issue of disability (return to work), an issue reserved to the SSA Commissioner'" cites to paragraph 5 of page 24 of the administrative transcript. (Docket Entry 12 at 13 (quoting Tr. 24 (¶ 5)).) However, that paragraph actually contains the ALJ's evaluation and weighing of Dr. Gilmer's November 2018 opinion that Plaintiff's "problems with his lower back w[ould] likely preclude him from doing [his prior construction work]," that "he could do a lighter job if such were available," and that he "might not be an appropriate candidate for some types of retraining" because of a "learning disability." (Tr. 24 (referencing Tr. 702).) Dr. Gilmer further "indicated that he supported [Plaintiff]'s application for disability on the basis that he could not return, for medical reasons, to the type of work that he had done all of his life." (Id.) The ALJ did discount Dr.
(continued...)

In short, the Court should deny relief on Plaintiff's third assignment of error.

## 4. Subjective Symptom Reporting

Lastly, Plaintiff contends that "[t]he [ALJ's] decision fail[ed] to conduct a proper analysis of the consistency of [Plaintiff's] allegations with the medical and other evidence." (Docket Entry 12 at 15 (citing Tr. 20-25); see also Docket Entry 15 at 5-6.) Specifically, Plaintiff alleges that the ALJ's conclusions are "bereft . . . of references to the record" and amount to "a 'cut and paste' method of decision writing." (Docket Entry 12 at 15 (citing Manns v. Colvin, No. 1:15CV133, 2015 WL 5821245 at *4-5 (M.D.N.C. Oct. 5, 2015) (unpublished) (Eagles, J.).) According to Plaintiff, the ALJ's entire evaluation of Plaintiff's subjective symptom reporting consists of the following paragraph:

> In sum, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of his symptoms are not supported by the overall evidence of record to the extent they purport to limit him more than that provided for in the [RFC] herein. Given all of the evidence, to include [Plaintiff's] testimony, the [ALJ] concludes that the above [RFC] fully accommodates all of [Plaintiff's] physical and mental impairments, severe and non-severe, alone and in combination, to include all associated symptoms and limitations.

---

[10](...continued)
Gilmer's November 2018 opinion, in part, because it "addresse[d] the ultimate issue of disability (return to work), an issue reserved to the SSA Commissioner" (id.) and, as that opinion very clearly references Plaintiff's ability to work, the ALJ did not err in doing so.

35

(Id. (quoting Tr. 25).) Plaintiff further maintains that the ALJ made a "bare conclusion in evaluating the intensity, persistence and limiting effects of symptoms [which] is insufficient by SSA's standards . . . ." (Id. at 16 (citing Social Security Ruling 16-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 119029, at *9 (Mar. 16, 2016) ("SSR 16-3p") (providing that "it is not enough for [ALJs] to make . . . conclusory statement[s] . . . [or for ALJs] to recite the factors described in the regulations for evaluating symptoms")).) Plaintiff's contentions warrant no relief.

SSR 16-3p (consistent with the Commissioner's regulations) adopts a two-part test for evaluating a claimant's statements about symptoms. See SSR 16-3p, 2017 WL 5180304, at *3; see also 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by

36

the use of medically acceptable laboratory diagnostic techniques."
Id.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

37

> 7. Any other factors concerning an individual's
> functional limitations and restrictions due to pain or
> other symptoms.

Id. at *7-8. The ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. at *5 (emphasis added). When evaluating a claimant's subjective complaints about their symptoms, however, the ALJ need not take those complaints "'at face value.'" Squires v. Colvin, No. 1:16CV190, 2017 WL 354271, at *5 (M.D.N.C. Jan. 24, 2017) (unpublished) (quoting Ramos-Rodriguez v. Commissioner of Soc. Sec., Civ. No. 11-1323, 2012 WL 2120027, at *3 (D.P.R. June 11, 2012) (unpublished)), recommendation adopted, slip op. (M.D.N.C. Mar. 6, 2017) (Schroeder, J.).

The ALJ in this case discussed Plaintiff's testimony at length (see Tr. 20-21), and noted Plaintiff's subjective complaints of pain in his neck, back, shoulders, hips, knees, feet, right elbow, hands, and thumbs (see Tr. 20-24). The ALJ found at part one of the analysis that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found at part two that his "statements concerning the intensity, persistence and limiting effects of th[o]se symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." (Tr. 21.)

38

As discussed in more detail below, the ALJ supported that finding with substantial evidence.

With regard to Plaintiff's treatment history, the ALJ noted that Plaintiff's symptoms and physical examinations remained within normal limits from May 2016 through January 2017. (Tr. 22 (citing Exs. 2F, 17F, 18F); see also Tr. 642-98.) The ALJ recognized further that Plaintiff's condition remained stable throughout 2018 (id. (citing Exs. 2F, 6F, 7F, 18F)), though Plaintiff took his medications in a manner not prescribed (id. (citing Ex. 20F); see also Tr. 406, 658, 715.) The ALJ additionally pointed to a physical examination which reflected that Plaintiff "was able to walk independently and did not limp walking short distances," "was able to heel and toe walk," "could touch the midway point between his knee and ankle" on forward flexion, and "had good clinical strength in both legs." (Tr. 23 (citing Ex. 10F); see also Tr. 512.) The ALJ further emphasized that "[t]he examination did not suggest acute synovitis in either [Plaintiff's] upper or lower extremities, specifically his hands and feet." (Id. (citing Ex. 10F); see also Tr. 512.) Furthermore, the ALJ reported that "[x]-rays of [Plaintiff's] lumbar spine showed normal bony architecture, with only slight narrowing in the intervertebral disc space. He had some early anterior marginal osteophytes present, with no evidence of inflammatory changes." (Id. (emphasis added).) Despite Plaintiff's osteoarthritis diagnosis in October 2017, the

39

ALJ noted Plaintiff's "[n]eurologic testing demonstrated grossly intact strength in both legs with no atrophy present," and that Plaintiff received a steroid injection in August 2018. (Tr. 23-24 (citing Exs. 12F, 25F); see also Tr. 544, 546, 829.) The ALJ additionally acknowledged Dr. Gilmer's opinion that Plaintiff's condition did not warrant surgery. (Tr. 24 (citing Ex. 12F); see also Tr. 537.)

Concerning Plaintiff's daily activities, the ALJ noted Plaintiff's testimony that he cared for his teenage son by cooking and cleaning for him, regularly attended Sunday church services, and regularly visited with his three young grandchildren at his home. (Tr. 21; see also Tr. 60-65.) The ALJ further noted that "[Plaintiff] was able to drive, grocery shop, pay bills, count change, handle a savings account, and use a checkbook." (Tr. 18-19.) Those significant and varied daily activities provide support for the ALJ's conclusion that Plaintiff's statements about the intensity of his symptoms lacked consistency with the record. (See Tr. 21.)

After reviewing and summarizing Plaintiff's testimony and the medical evidence, the ALJ concluded that Plaintiff's subjective statements lacked consistency with the entire record. (Tr. 25.) The ALJ, therefore, conducted a proper review of Plaintiff's subjective symptoms and supported with substantial evidence his conclusion to not fully credit those complaints.

40

In light of the foregoing analysis, the Court should deny relief on Plaintiff's challenge to the ALJ's analysis of Plaintiff's subjective symptom reporting.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that judgment be entered dismissing this action.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

September 9, 2021

Case 1:20-cv-00364-NCT-LPA   Document 16   Filed 09/09/21   Page 41 of 41